BARBER v SMH (US), INC

Docket No. 144880. Submitted April 8, 1993, at Lansing. Decided
November 2, 1993, at 9:15 A.M. Leave to appeal sought.

Jon Barber brought an action in the Wayne Circuit Court against
SMH (US), Inc., alleging breach of an employment contract
terminable for just cause only, bad-faith discharge, unjust
enrichment, and promissory estoppel in connection with his
termination as an SMH sales representative. The court, Marri-
ane O. Battani, J., granted summary disposition for the defen-
dant, finding no genuine issues of material fact and the defen-
dant entitled to judgment as a matter of law. The plaintiff
appealed.

The Court of Appeals *held:*

1. There is no objective support for the plaintiff's claim that
the defendant made oral representations that the plaintiff
would be the defendant's representative as long as he was
"profitable" and "doing the job" for the defendant. Accordingly,
the plaintiff has failed to rebut the presumption that his
employment was terminable at will by either party.

2. In cases involving termination of employment, Michigan
does not recognize a cause of action for breach of a covenant of
good faith and fair dealing. Therefore, the trial court did not
err in dismissing the claim that the plaintiff's discharge had
breached such a covenant.

3. The trial court did not err in dismissing the claim of
unjust enrichment. Because the terms of the plaintiff's employ-
ment were covered by an express contract, a contract cannot be
implied in law to prevent the claimed unjust enrichment.

4. In the absence of a definite and clear promise by the
defendant that the plaintiff's employment would be terminated
for just cause only, the plaintiff cannot establish a claim of
promissory estoppel based on the assertion that he gave up
other employment opportunities in reliance on such a promise.

Affirmed.

REFERENCES

Am Jur 2d, Contracts § 14; Estoppel and Waiver § 48; Master and
Servant § 27; Restitution and Implied Contracts §§ 3, 6.

See ALR Index under Labor and Employment; Promissory Estoppel;
Restitution and Implied Contracts.

1. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMINATION.

A contract of employment for an indefinite duration is presumed to provide for employment that is terminable at will by either party; the presumption may be rebutted with proof of an express or implied contract that provides employment of a definite term or forbids discharge in the absence of just cause.

2. EQUITY — UNJUST ENRICHMENT — CONTRACTS.

A contract may not be implied in law to prevent a claimed unjust enrichment where there is an express contract covering the same subject matter.

3. ESTOPPEL — PROMISSORY ESTOPPEL.

Promissory estoppel arises where there is a promise that the promisor reasonably should have expected would induce action of a definite and substantial character on the part of the promisee and the promise in fact produces such reliance or forbearance under circumstances requiring that the promise be enforced if injustice is to be avoided.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *David A. Kotzian* and *Patrick Burkett*), for the plaintiff.

*Tucker & Rolf* (by *Matthew W. Schlegel*), for the defendants.

Before: GRIFFIN, P.J., and REILLY and FITZGERALD, JJ.

PER CURIAM. Plaintiff appeals as of right a circuit court order granting defendant's motion for summary disposition.[1] We affirm.

In May 1989, plaintiff was retained by defendant as a sales representative to sell Tissot watches to independent jewelry stores in Michigan, Ohio, and Indiana. After his relationship with defendant was terminated in January 1991, plaintiff filed a complaint in the Wayne Circuit Court, alleging (1) the

[1] According to defendants, Tissot was previously a subsidiary corporation of SMH (US), Inc., but was dissolved in January 1990. For the purposes of this appeal we will refer to SMH (US) and Tissot (US) as defendant, in the singular.

existence and breach of a contract of employment providing for termination only for just cause, (2) a bad-faith discharge, (3) unjust enrichment, and (4) promissory estoppel. The trial court, relying on *Rowe v Montgomery Ward & Co, Inc,* 437 Mich 627; 473 NW2d 268 (1991), found plaintiff's employment to have been terminable at will by either party and granted defendant's motion for summary disposition of all four counts on that basis.[2]

A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. The trial court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence presented and grant summary disposition if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Panich v Iron Wood Products Corp,* 179 Mich App 136, 139; 445 NW2d 795 (1989). The opponent must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial. *Amorello v Monsanto Corp,* 186 Mich App 324, 329-330; 463 NW2d 487 (1990).

I

Plaintiff's claim of breach of contract is based upon an alleged verbal promise by defendant that the parties' contractual relationship could not be terminated absent just cause. In the affidavit attached to his response to defendant's motion for summary disposition, plaintiff alleged that in the spring of 1989 he was contacted by defendant's vice president of sales, Michael Pucci, who ex-

---

[2] The court did not specify which court rule it relied upon in making its ruling. However, the court, in making its ruling, apparently did not rely solely on plaintiff's pleadings. Accordingly, we will consider this matter as though summary disposition was granted pursuant to MCR 2.116(C)(10).

pressed interest in employing plaintiff as a sales representative in Michigan, Ohio, and Indiana. Plaintiff also alleged that over the course of six weeks, Pucci and Morris Pennington, defendant's vice president of marketing, attempted to convince plaintiff to accept the position. Further, plaintiff asserted the following:

> During the course of my discussions with Mr. Pucci and Mr. Pennington, I specifically negotiated with them regarding the terms and conditions under which my status as a manufacturer's representative could be terminated.
>
> In particular, prior to my acceptance of Defendant's offer as a manufacturer's representative, Mr. Pucci promised me that as long as I was profitable and doing the job for Defendant, I would be Defendant's exclusive representative in the States of Michigan, Ohio and Indiana.

According to plaintiff, the promise was reiterated during his tenure as a sales representative.

Employment contracts of indefinite duration are presumed to provide for employment at will. *Rowe, supra* at 636. The presumption may be rebutted with proof of an express contract, written or oral, for a definite term or forbidding discharge in the absence of just cause. The presumption may also be rebutted with proof of a promise implied in fact for a particular period of time or to terminate only for just cause. *Id.* at 636-637.

Contractual liability is consensual and will not arise unless the parties mutually assent to be bound. *Rood v General Dynamics Corp,* 444 Mich 107; 507 NW2d 591 (1993). In analyzing oral statements for contractual implications, a court must determine the meaning that reasonable persons might have attached to the language. In order to determine whether there was mutual assent to a

contract, the court applies an objective test, "looking to the expressed words of the parties and their visible acts." *Rowe, supra* at 640. The court considers the relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifested their intent. *Id.* at 640-641; *Rood, supra* at 119. Oral contracts for just-cause employment will be recognized only where the circumstances suggest that both parties intended to be bound. *Id.* at 118-119. Oral statements of job security must be clear and unequivocal to overcome the presumption of employment at will. *Rowe, supra* at 636, 645.

In this case, plaintiff relies on the statement that "as long as [he] was profitable and doing the job for Defendants, [he] would be Defendant's exclusive representative in the States of Michigan, Ohio and Indiana." Plaintiff asserts in his affidavit that the promise was made during negotiations regarding the terms and conditions under which his status as a manufacturer's representative could be terminated.

In *Rowe,* the Supreme Court compared the factual situation in that case with the situation in *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980). The Court noted that the employee in *Toussaint* was hired for a unique position and engaged in preemployment negotiations regarding job security. Further, the plaintiff in *Toussaint,* in response to inquiries about job security, was given a manual specifically providing for termination only for just cause. The Court found that the manual was objective support for the oral representations made to the plaintiff in *Toussaint. Rowe, supra* at 644.

In *Schippers v SPX Corp,* 444 Mich 107; 507 NW2d 591 (1993), the companion case to *Rood,*

*supra,* the Court analyzed the context in which the alleged promises of job security were made to the plaintiff to determine whether a supervisor's statements could be interpreted as assent to a contract providing for termination only for just cause. The Court, distinguishing *Toussaint,* found that the statements relied on by the plaintiff were made in response to the plaintiff's concern about losing his job in the event of the defendant's discontinuance of its trucking operations. The Court found no evidence to indicate that the plaintiff expressed concern about job security in the context of just-cause employment. *Id.* at 124. The Court rejected the argument that the uniqueness of his position and the fact that he gave up seniority in his previous position was a sufficient basis to permit an inference that a just-cause promise had been made. *Id.* at 125-126.

In this case, plaintiff asserts that he engaged in preemployment negotiations with representatives of defendant regarding termination of his employment. Although he asserts that he was promised that he would be employed "as long as he was profitable and doing the job," plaintiff does not specifically assert that the promise was made in response to his articulated concerns that he be terminated for just cause only. See *Schippers, supra* at 127. Furthermore, on the basis of plaintiff's affidavit, we are unable to determine the substance of the negotiations or the context in which the alleged promise was made.

Moreover, we note that there is no objective support for the claimed oral representations. See *Rowe, supra* at 643-644. Compare *Toussaint, supra.* In fact, the written document purporting to be an "agreement made on May 10th 1989 between Mr. John Barber (Sales Representative) and Tissot (US) Inc. (Company)" weighs against a finding of assent on the part of defendant to a just-cause employ-

ment contract.[3] The "agreement," signed by a representative of defendant, states in part:

> This agreement will be effective immediately and will continue until terminated by either party by registered mail. In the event of termination by either party, Representative agree's [sic] to return sample line to Company within 48 hours.

Thus, the only objective evidence presented indicates an intent and understanding, at least on the part of defendant, that the employment relationship between plaintiff and defendant was to be at will.[4] Viewed in context, the oral statements were insufficient to rise to the level of an agreement for just-cause employment.

## II

Plaintiff also asserts that the trial court erred in granting summary disposition of his claim that he was discharged in bad faith. Relying on *Reed v Kurdziel,* 352 Mich 287; 89 NW2d 479 (1958), plaintiff asserts that the basic principle of fair dealing prevents defendant from taking advantage of plaintiff's efforts and depriving him of commissions on future sales.

In his brief on appeal, plaintiff argues that his claim is based upon contract theory and the general rule that a "good faith" term is implied in every contract. However, this Court has refused to recognize a cause of action for breach of an implied covenant of good faith and fair dealing in the employment context. *Hammond v United of Oak-*

---

[3] Plaintiff acknowledges receiving a copy of the "agreement," but denies signing it.

[4] Contrary to plaintiff's assertion, we believe that this portion of the "agreement" addresses more than the procedure by which the agreement may be terminated.

*land, Inc,* 193 Mich App 146, 152; 483 NW2d 652 (1992).

Plaintiff claims that he was not an employee of defendant, but was an independent sales representative. We conclude that although plaintiff's agreement indicated that he would "not hold himself out to be an employee" of defendant, the exclusive sales relationship between plaintiff and defendant can be classified as an employment relationship within the meaning of *Hammond, supra.*[5] Therefore, to the extent that plaintiff is claiming a cause of action for breach of an implied covenant of good faith and fair dealing, independent of the claim of breach of contract, the trial court correctly granted defendant's motion for summary disposition, albeit for the wrong reason. *Bonner v Chicago Title Ins Co,* 194 Mich App 462, 472; 487 NW2d 807 (1992).

Additionally, to the extent that plaintiff's complaint can be read as a claim of breach of contract seeking posttermination sales commissions, summary disposition was also proper. Entitlement to posttermination commissions depends primarily upon the parties' intentions as determined from the contract and other circumstances.

> "The relationship between agent or broker and principal being a contractual one, it is immediately apparent that whether an agent or broker employed to sell personalty on commission is entitled to commissions on sales made or consummated by his principal or by another agent depends upon the intention of the parties and the interpretation of the contract of employment, and that, as in other cases involving interpretation, all

---

[5] We find it somewhat incongruous that plaintiff, in Issue I, relies on employment law cases to support his argument that his relationship with defendant could be terminated for just cause only, but claims in this context that this was not an employment situation.

the circumstances must be considered." [*Reed, supra* at 294, quoting 12 ALR2d 1360, 1363.]

See also *Butterfield v Metal Flow Corp*, 185 Mich App 630, 635-637; 462 NW2d 815 (1990), and *Roberts Associates, Inc v Blazer Int'l Corp*, 741 F Supp 650, 652-653 (ED Mich, 1990).

The only evidence of an agreement between the parties in this case with respect to sales commissions is the "proposed agreement" attached to defendant's motion for summary disposition and provided with the parties' briefs on appeal. Plaintiff acknowledges that he received the agreement, but claims that he never signed it. However, in his affidavit, plaintiff does not contest the terms of the agreement with regard to commissions or claim that there was any other agreement between the parties with respect to commissions.

The agreement provides, in pertinent part:

> Representative will be compensated at a rate of 10% for net billing to approved customer's [sic] in the assigned territory. Under no circumstances will commissions be paid for orders written and not shipped. *In the event of termination of this agreement by either party, commission will be paid on all orders received and shipped as of the date of the termination.* Commissions will be reduced for any customer's purchases which must be collected thru [sic] a collection agency.

Thus, it is clear from the agreement that plaintiff was not entitled to receive commissions on sales occurring after his termination. Furthermore, we note that plaintiff's right to commissions was based upon sales made, not customers procured. See *Roberts, supra*. Compare *Militzer v Kal-Die Casting Corp*, 41 Mich App 492, 495; 200 NW2d 323 (1972).

III

Plaintiff, in his complaint, also alleges unjust enrichment. He claims that defendant used plaintiff's knowledge and expertise to develop accounts and make sales without fully compensating him.

The elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. *Dumas v Auto Club Ins Ass'n,* 437 Mich 521, 546; 473 NW2d 652 (1991). In such instances, the law operates to imply a contract in order to prevent unjust enrichment. *Martin v East Lansing School Dist,* 193 Mich App 166, 177; 483 NW2d 656 (1992). However, a contract will be implied only if there is no express contract covering the same subject matter. *Id.; Campbell v City of Troy,* 42 Mich App 534, 537; 202 NW2d 547 (1972).

As we have already noted, plaintiff does not dispute that the document entitled "proposed agreement" sets forth the parties' agreement regarding plaintiff's entitlement to commissions. Accordingly, we will not imply a contract under the doctrine of unjust enrichment. The trial court properly granted defendant's motion for summary disposition of this claim, albeit for the wrong reason. *Bonner, supra.*

IV

Lastly, we conclude that summary disposition was proper with respect to plaintiff's claim of promissory estoppel. Plaintiff asserts that he gave up other sales opportunities in reliance on defendant's promises that he would not be terminated without just cause.

Promissory estoppel arises in equity when (1)

there is a promise (2) that the promisor should have reasonably expected to induce action of a definite and substantial character on the part of the promisee (3) which in fact produces reliance or forbearance of that nature (4) under circumstances such that the promise must be enforced if injustice is to be avoided. *Martin, supra* at 178. The doctrine of promissory estoppel is cautiously applied. *Marrero v McDonnell Douglas Capital Corp,* 200 Mich App 438; 505 NW2d 275 (1993). In order to support a claim of estoppel, a promise must be definite and clear. *Kamalnath v Mercy Hosp Corp,* 194 Mich App 543, 552; 487 NW2d 499 (1992).

The alleged promise made to plaintiff was that "as long as he was profitable and doing the job" he would be defendant's exclusive representative in Michigan, Ohio, and Indiana. We conclude that this statement was not a "definite and clear" promise of just-cause employment. See discussion of Issue I. Furthermore, although plaintiff makes the conclusionary allegation that he gave up other sales opportunities in reliance on defendant's promise, he has not alleged or provided any specifics that would raise a question of fact regarding this issue. The doctrine of estoppel should be applied only where the facts are unquestionable and the wrong to be prevented undoubted. *Marrero, supra* at 442. Summary disposition of this claim was proper.

Affirmed.