*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SBR ASSOCIATES II, LLC,

      Plaintiff-Appellant,

v

AFJ DEVELOPMENT COMPANY, LLC,

      Defendant-Appellee.

UNPUBLISHED
July 29, 2021

No. 354992
Oakland Circuit Court
LC No. 2020-181076-CB

Before: GADOLA, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

In this breach of contract action, plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(8). We affirm.

## I. BACKGROUND FACTS

Plaintiff is a real estate developer. In the summer of 2019, it was hoping to develop a property owned by Kelly Properties, LLC (Kelly) located in Troy, Michigan (the Kelly Property). In July 2019, plaintiff contacted defendant to begin negotiations about a possible partnership to develop the Kelly Property. Defendant's representatives agreed to meet with plaintiff about the potential partnership. Before the meeting, plaintiff sent defendant a "Confidentiality and Non-Circumvention Agreement" (the Agreement), which a representative from defendant signed. The Agreement included a number of "Recitals," one of which stated, "[Plaintiff] desires to purchase, and[/]or develop certain real estate located in Southeastern Michigan five county Michigan [sic] area excluding Wayne County." The Agreement also noted that in signing the Agreement, defendant agreed to "keep all information relating to the possible acquisition and development of these properties . . . confidential. No disclosures to any third parties will be permitted unless given written authorization by [plaintiff]."

The parties met in-person to discuss the potential partnership; yet, the partnership never materialized, and plaintiff eventually partnered with Kirco Development, LLC to submit a proposal to Kelly for development of the Kelly Property. However, Kelly rejected the plaintiff-Kirco proposal. In December 2019, plaintiff discovered that defendant had entered into a separate agreement with Kelly to develop the Kelly Property.

Plaintiff filed a three-count complaint against defendant alleging (1) breach of contract, (2) tortious interference with a business expectancy, and (3) unjust enrichment. In lieu of an answer, defendant moved for summary disposition under MCR 2.116(C)(8), and the trial court granted the motion. This appeal followed.

## II. MOTION FOR SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

"This Court reviews de novo the trial court's decision to grant or deny summary disposition." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). This Court has explained the review of a motion filed under MCR 2.116(C)(8) as follows:

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint. When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019) (citations omitted).]

The issues presented on appeal also require this Court to interpret a contract, and "[t]he proper interpretation of a contract is a question of law, which this Court reviews de novo." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003).

### B. ANALYSIS

Plaintiff argues that the trial court erred by dismissing all three of its claims. We disagree.

#### 1. BREACH OF CONTRACT

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). At issue in this case is the second element. Namely, whether the trial court correctly interpreted the Agreement when it concluded that "[the] contractual terms do not support Plaintiff's allegations that the Agreement prohibited Defendant from pursuing its own project with Kelly Properties, LLC."

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 654; 954 NW2d 231 (2020). "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory*, 473 Mich at 464. "[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Id*. at 461.

The Agreement stated that defendant would agree "to the following restriction of activities," and then specified that restriction as to "keep all information relating to the possible acquisition and development of [the Kelly property] . . . confidential." In its complaint, plaintiff acknowledged that defendant informed plaintiff about "some dealings" defendant had with Kelly about the Kelly Property before it signed the Agreement. The complaint nevertheless charged that defendant "breached the Agreement by circumventing [plaintiff] and using [plaintiff's] confidential information" when "[defendant] secretly pursued and then entered into its own agreement with Kelly, without notifying or including [plaintiff]."

We agree with the trial court that the contractual terms of the Agreement do not support plaintiff's allegations that defendant breached the Agreement. A plain reading of the Agreement shows that the parties intended to "restrict" plaintiff from only one thing—disclosing confidential information. The allegations in plaintiff's complaint do not support that defendant failed to keep information relating to plaintiff's "possible acquisition and development" of the Kelly Property confidential—only that defendant "circumvent[ed]" plaintiff and struck its own deal for the Kelly Property.

On appeal, plaintiff argues that, when reading the contract as a whole, the parties agreed to the Agreement's title—"Confidentiality and Non-Circumvention Agreement"—as an enforceable term of the contract, such that the Agreement had a "non-circumvention restriction." Plaintiff cites no authority for its assertion that a contract's title is an enforceable term of the contract. Moreover, contrary to plaintiff's argument, reading the Agreement as a whole does not suggest that the parties agreed to the title of the Agreement as an enforceable term. The title appears twice—once in the header of the Agreement, and once in the Agreement's first line, where it states, "THIS CONFIDENTIALITY AND NON-CIRCUMVENTION AGREEMENT (this 'Agreement') is made and entered into effective this [day] by and between [plaintiff] and [defendant]." Neither reference suggests that the parties agreed to a "non-circumvention restriction" as a term of their contract. Plaintiff's argument otherwise is unpersuasive.

Plaintiff also argues that there was parol evidence evincing that, when the Agreement was signed, defendant orally agreed to plaintiff's understanding of the Agreement as having a non-circumvention restriction. Such evidence—extrinsic evidence of the parties' intent—is only permissible where the contract's terms are ambiguous, *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003), and the terms of the contract at issue in this case are not ambiguous.[1] As a result, it was not necessary for the trial court to deny summary disposition on the basis of purported parol evidence.

Plaintiff further argues that defendant co-opted its plans for the Kelly Property when it sought the partnership with Kelly. Plaintiff explains that defendant's initial discussions with Kelly "were about a different project and had ended. It was only when [plaintiff] brought [defendant] back into the discussions and described its broader project with Kelly on August 2 that [defendant]

---

[1] Plaintiff argues that the contract was ambiguous because it did "not fully describe the confidentiality and non-circumvention restriction," but there is nothing ambiguous about the Agreement. Rather, it appears that plaintiff wishes to add a non-circumvention restriction to the Agreement when such a restriction is plainly not part of the contract's terms.

then re-connected with Kelly." Accepting as true plaintiff's allegation that its project proposal was "much broader" than defendant's original proposal to Kelly, this allegation still does not show that defendant somehow breached the Agreement with plaintiff because, again, a breach under the language of the Agreement would require defendant to disclose confidential information about plaintiff's plans to a third-party. Simply because defendant's second proposal with Kelly was "much broader" than its first proposal does not necessarily mean defendant disclosed confidential information to a third-party.

Accordingly, the trial court did not err when it concluded that, based on the allegations in plaintiff's complaint, plaintiff's breach of contract claim was so clearly unenforceable that no factual development could possibly justify recovery.

## 2. TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

The elements of tortious interference with a business relationship are (1) "the existence of a valid business relationship or expectancy," (2) "knowledge of the relationship or expectancy on the part of the defendant," (3) "an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy," and (4) "resultant damage to the plaintiff." *Dalley v Dykema Gossett*, 287 Mich App 296, 323; 788 NW2d 679 (2010). To establish a valid business expectancy, "[t]he expectancy must be a reasonable likelihood or probability, not mere wishful thinking." *Cedroni Assn, Inc v Tomblinson, Harburn Assoc, Architects & Planners Inc*, 492 Mich 40, 45; 821 NW2d 1 (2012) (quotation marks and citation omitted).

In its complaint, plaintiff alleged that it had "a reasonable expectation of a business expectancy with Kelly" because plaintiff was "in contact with [Kelly] regarding a potential multimillion-dollar mixed-use development project for [the Kelly property]" and, along with Kirco, "proposed a Letter of Intent to Kelly." The trial court rejected that this established a valid business expectancy because "Plaintiff has not presented any allegations to demonstrate that it was reasonably likely or probable that [Kelly] would choose its offer." We agree with the trial court. Plaintiff's alleged business expectancy was "mere wishful thinking"—the complaint did not allege facts sufficient to establish a reasonable likelihood or probability that its offer would be accepted, so its complaint failed to allege a valid business expectancy. See *id*. Accordingly, the trial court did not err when it concluded that, based on the allegations in plaintiff's complaint, plaintiff's tortious-interference-with-a-business-expectancy claim was so clearly unenforceable that no factual development could possibly justify recovery.

## 3. UNJUST ENRICHMENT

As explained by our Supreme Court in *Wright v Genesee Co*, 504 Mich 410, 417-418; 934 NW2d 805 (2019):

> Unjust enrichment is a cause of action to correct a defendant's unjust retention of a benefit owed to another. It is grounded in the idea that a party shall not be allowed to profit or enrich himself inequitably at another's expense. A claim of unjust enrichment can arise when a party has and retains money or benefits which in justice and equity belong to another. [Quotation marks and citations omitted.]

"In such instances, the law operates to imply a contract in order to prevent unjust enrichment." *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993). "[A] contract will be implied only if there is no express contract covering the same subject matter." *Id*. (citation omitted).

The trial court ruled that plaintiff's unjust enrichment claim failed as a matter of law because the Agreement covered "the same subject matter as" plaintiff's unjust enrichment claim, and a court may not imply a contract where an express contract covers the same subject matter. We agree with the trial court. The parties had an express contract covering their actions in relation to the Kelly Property—the Agreement. Plaintiff's unjust enrichment claim relates to this same subject matter, so that claim fails as a matter of law.

On appeal, plaintiff conflates the subject matter of the Agreement with its terms. Plaintiff argues that the trial court concluded "that the written contract covers *only one subject matter*: confidentiality," so plaintiff's unjust enrichment claim pertaining to defendant's circumvention of plaintiff would not be covered. But confidentiality and circumvention both fall under the subject matter of the contract—the parties' actions in relation to the Kelly Property. Whether the contract included a confidentiality restriction and a non-circumvention restriction is an argument over the contract's terms, not over the contract's subject matter.

"If the parties admit that a contract exists, but dispute its terms or effect, an action will not also lie for quantum meruit or implied contract." *Bowlers' Alley, Inc v Cincinnati Ins Co*, 32 F Supp 3d 824, 834 (ED Mich, 2014) (quotation marks and citation omitted). That is the case here. The parties do not dispute that a contract exists, only the terms of the contract. Accordingly, the trial court properly concluded that plaintiff's unjust enrichment claim failed as a matter of law.[2]

## III.  AMENDMENT

Plaintiff asserts that it should have been allowed to amend its complaint under MCR 2.116(I)(5) in order to add allegations clarifying its claims. We disagree.

## A.  STANDARD OF REVIEW

A trial court's decision to deny plaintiff the opportunity to amend its complaint is reviewed for an abuse of discretion. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable

---

[2] Plaintiff argues that defendant "has not conceded or stipulated that the Agreement covers the specific subject matter of confidentiality and circumvention." Again, "confidentiality and circumvention" are not the subject matter of the Agreement. Moreover, defendant does not dispute the existence of the contract, which is the pertinent inquiry. See *Bowlers' Alley, Inc*, 32 F Supp 3d at 834 ("A plaintiff can only plead breach of contract and implied contract claims in the alternative if there is doubt as to the existence of a contract."). A defendant need not "concede" or "stipulate" to a contract's subject matter, so long as the contract's existence is not disputed.

and principled outcomes." *Shawl v Spence Bros, Inc*, 280 Mich App 213, 220-221; 760 NW2d 674 (2008).

## B. ANALYSIS

MCR 2.116(I)(5) states, "If the grounds asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." In other words, when a court grants summary disposition under MCR 2.116(C)(8), it "must give the parties an opportunity to amend their pleadings pursuant to MCR 2.118, unless the amendment would be futile." *Weymers*, 454 Mich at 658.

With respect to its breach of contract claim, plaintiff argues that it could "expand on and clarify the allegations that Defendant misused the elements of" plaintiff's proposal for the Kelly Property by showing that "[t]he project Defendant publicly announced [for the Kelly Property] contained many of the same elements as [plaintiff] had developed working with Kelly through August." The trial court did not abuse its discretion by concluding that these additional allegations would not have saved plaintiff's claim. As previously explained, the Agreement required defendant to keep plaintiff's "possible acquisition and development of [the Kelly property] . . . confidential," and allegations that defendant announced a similar project to plaintiff's does not suggest that defendant disclosed plaintiff's possible acquisition and development of the Kelly property to Kelly. Plaintiff's additional allegations arguably support that defendant circumvented plaintiff to strike its own deal with Kelly, but as previously explained, such conduct was not prohibited by the Agreement.

Plaintiff also argues that it should have been allowed to amend its breach of contract claim to "clarify that [defendant's representative] verbally agreed not to circumvent [plaintiff]." As previously explained, however, extrinsic evidence of the parties' intent is not admissible when the terms of the contract are unambiguous, as in this case. *Klapp*, 468 Mich at 469.

For its tortious-interference-with-a-business-expectancy claim, plaintiff argues that it could have asserted additional facts to show "how substantial its conversations with Kelly had been and the likelihood that Kelly would choose [plaintiff's] offer." Yet the additional facts that plaintiff points to merely show that plaintiff put substantial work into crafting its offer—plaintiff spoke with Kelly on multiple occasions, sent multiple letters of intent, spent "hundreds of hours" developing its proposal, and felt confident enough in its proposal to discuss it with possible partners. None of this, however, suggests that Kelly was likely to choose plaintiff's offer. All it suggests is that plaintiff was intent on pursing the development of the Kelly Property. In short, plaintiff's efforts in pursuing development of the Kelly Property do not support that plaintiff's offer to Kelly had "a reasonable likelihood or probability" of being accepted. As a result, the trial court did not abuse its discretion by concluding that amendment to plaintiff's claim for tortious interference with a business expectancy was futile. See *Cedroni Assn*, 492 Mich at 45 (quotation marks and citation omitted).

Finally, with respect to its unjust enrichment claim, plaintiff asserts that it "should have been allowed to amend its complaint as noted above," but it is unclear what plaintiff is referring to. For the reasons previously explained, plaintiff's unjust enrichment claim failed because the

Agreement covered the same subject matter as the unjust enrichment claim. As such, no contract could be implied, and plaintiff's unjust enrichment claim failed as a matter of law. *Bowlers' Alley, Inc*, 32 F Supp 3d at 834.

## IV. CONCLUSION

Affirmed.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien